**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

RODOLFO ULISES GUERRERO MURILLO,[1]

Petitioner,

v.

ACTING OR CURRENT WARDEN ADELANTO ICE PROCESSING CENTER et al.,

Respondents.

Case No. 5:26-cv-05133-DFM

MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

Petitioner Rodolfo Ulises Guerrero Murillo, a lawful permanent resident and a citizen of El Salvador, has been held at the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center under 8 U.S.C. § 1226(c) since October 11, 2024, while his appeals of a bond denial and removal order are pending before the Board of Immigration Appeals ("BIA"). Proceeding pro se, he filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, alleging that his prolonged detention has become punitive. See Dkt. 1

[1] The docket spells Petitioner's name "Murillo"; his filings use "Murrillo," and agency records and the prior case use "Guerrero-Murrillo." The Court uses the docket spelling.

("Petition") at 2-3, 16-17. After Respondents answered and Petitioner filed a Traverse, see Dkt. 8 ("Answer"); Dkt. 11 ("Traverse"), counsel appeared and the parties filed supplemental briefs, see Dkt. 19 ("Supp. Mem."); Dkt. 24 ("Supp. Resp."); Dkt. 25 ("Supp. Reply"). Petitioner seeks release or, alternatively, a new bond hearing. See Supp. Mem. at 20-22.

On the record, Petitioner has not shown that his detention has become excessive in relation to the government's interest in protecting the community, or that due process now requires a second hearing. Accordingly, the Petition is **DENIED** and this action is **DISMISSED** without prejudice.

## II. BACKGROUND

Petitioner was admitted as a lawful permanent resident in 1979. See Petition at 2; Dkt. 19-1 at 78. He states that his wife, three children, mother, and five siblings are United States citizens and that he most recently worked as a landscaper. See Petition at 2. According to an October 2025 bond memorandum by an immigration judge ("IJ"), he was convicted of felony drug possession in 1994, of driving under the extreme influence in 2010, and later, in federal court, of conspiracies to distribute methamphetamine and to unlawfully dispose of firearms, for which he received forty-one months in prison and five years of supervised release. See Dkt. 8-3 ("Bond Memorandum") at 4-5. In his plea agreement, Petitioner admitted delivering three pistols to a confidential source in June 2021 and delivering about 884 grams of methamphetamine, a pistol, and a rifle in July 2021. See Dkt. 19-1 ("Plea Agreement") at 14-16. He also admitted possessing 3.044 kilograms of methamphetamine, 112.5 grams of fentanyl, and two firearms in his Bullhead City, Arizona home in November 2021. See id. His co-conspirators included his son. See id.

ICE took Petitioner into custody on October 11, 2024, upon his release from federal custody, and charged him as removable under 8 U.S.C.

§ 1227(a)(2)(A)(iii) as an aggravated felon. See Bond Memorandum at 3, 7; Petition at 2. On April 10, 2025, the IJ held a hearing under the class injunction in Rodriguez v. Holder, No. CV 07-3239-TJH (C.D. Cal.), at which Petitioner was represented and presented evidence. See id. at 3-4. The IJ placed the burden on the Department of Homeland Security ("DHS") to prove by clear and convincing evidence that detention was warranted, found that Petitioner's release would pose a danger, and did not reach flight risk. See Bond Memorandum at 3-4; Dkt. 8-1 ("April 2025 Bond Order") at 6-8. Petitioner appealed. The BIA remanded on September 26, 2025, because the IJ's checklist order did not permit meaningful review. See Dkt. 8-2 at 4-5.

On October 3, 2025, the IJ issued a written memorandum that again applied the clear-and-convincing standard. The IJ found Petitioner dangerous based on his convictions and what the IJ described as the recency of his criminal activity. See Bond Memorandum at 5-6. The IJ weighed his mitigating evidence, including his supervised-release terms, the absence of any indicated violation, his family ties, and his employment, and certified the matter to the BIA. See id. at 4-8. Respondents state that the appeal remains pending. See Supp. Resp. at 2, 6. A screenshot of the EOIR case portal lists it as "Case Completed" with the September 2025 remand as the decision. See Dkt. 19-1 at 278. Neither party has supplied a later BIA ruling.

In the removal case, Petitioner's expert testified at hearings in July, October, and December 2025. See Dkt. 19-1 at 78. A September 2025 hearing was postponed because of problems with the immigration court's recording equipment. See id. at 54-58, 60. On February 5, 2026, the IJ sustained the aggravated-felony charge, found a particularly serious crime barring withholding of removal, denied protection under the Convention Against Torture ("CAT"), and ordered Petitioner removed. See id. at 79-80, 85-86, 97-98. Petitioner appealed. See id. at 100. After the BIA issued a briefing

schedule, counsel moved for a complete transcript, stating that about an hour and forty-five minutes of the expert's October 2025 testimony was omitted. See id. at 104-111. On July 1, 2026, the BIA suspended the briefing schedule without stating a reason. See id. at 113. Counsel attributes the suspension to the transcript problem and anticipates a possible remand. See Supp. Mem. at 8-9, 15-16.

Petitioner's first habeas petition was denied and dismissed without prejudice for failure to exhaust. See Gerrero Murrillo v. Acting or Current Warden et al., No. 5:26-cv-03204-RGK-DFM, Dkts. 11, 14, 15. Here, he argues that his detention has become punitive because of its length, government delay, its likely future duration, conditions at Adelanto, and systemic bias in the immigration courts. See Petition at 7-15; Supp. Mem. at 10-22. Respondents argue that § 1226(c) mandates his detention, that he received a Rodriguez hearing review of which belongs before the BIA, and that delay and conditions do not warrant release or a new hearing. See Answer at 3-6; Supp. Resp. at 2-6.

## III. DISCUSSION

A federal court may grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). A court reviewing a § 1226(c) dangerousness determination may not reweigh the evidence. See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024).

### A. Statutory Authority and Exhaustion

Because the BIA has not ruled on Petitioner's removal appeal, his removal order is not final, and he is detained under § 1226(c)(1)(B). See 8 C.F.R. § 1241.1(a). That provision contains no release date or right to periodic

bond hearings. See Jennings v. Rodriguez, 583 U.S. 281, 303-06 (2018). Petitioner's request for a declaration that his detention violates the immigration statutes and regulations therefore fails. See Petition at 16. However, Jennings left constitutional challenges open. See 583 U.S. at 312; see also Hernandez Avilez v. Garland, 69 F.4th 525, 538 (9th Cir. 2023) (remanding § 1226(c) detainee's due process claim without deciding it).

The Court must resolve exhaustion first. See Laing v. Ashcroft, 370 F.3d 994, 998, 1000 (9th Cir. 2004). Exhaustion is prudential. See id. at 997. A court may waive it if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing, 370 F.3d at 1000). Absent excusal, the court "should either dismiss the petition without prejudice or stay the proceedings." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). The petitioner bears the burden. See id. at 1160-61.

Petitioner has carried that burden for two claims: (1) that the cumulative length of his detention has made it punitive, and (2) that the passage of time and the course of his proceedings now require a new hearing. He did not bypass the administrative process. He appealed the bond denial in May 2025, and the BIA has not ruled in the more than twelve months since certification. Briefing in his removal appeal has been suspended since July 2026. A BIA ruling on the 2025 bond record would not answer whether detention that has already accrued has become unconstitutional, and it could not undo that detention. The remedy is therefore "inadequate or not efficacious" for these claims. Hernandez, 872 F.3d at 988.

The excusal reaches no further. As Respondents argue, challenges to the IJ's weighing of the evidence or to the fairness of the April 2025 hearing are case-specific questions the BIA is designed to review. See Supp. Resp. at 2, 6.

Those challenges are dismissed without prejudice, and the Court does not decide them. Petitioner also contends that systemic bias makes BIA review futile. See Supp. Mem. at 11-14. That contention fails because, as explained below, his evidence does not connect that bias to his own proceedings. The portal screenshot adds uncertainty about the bond appeal's status. But it does not establish that the appeal has been closed, given Respondents' representation that it is pending.

**B. The 2025 Bond Determination and Petitioner's Bias Evidence**

To the extent Petitioner asks the Court to reweigh the evidence underlying the IJ's determination, that challenge remains before the BIA, and a reviewing court could not reweigh in any event. See Petition at 12-13; Martinez, 124 F.4th at 782-86. The Court describes the IJ's findings only for their bearing on the claims it decides, and two points matter. First, the IJ did not find Petitioner to be a flight risk, as he suggests. See Petition at 3, 12. The IJ twice declined to reach flight risk, so his detention rests on dangerousness alone. See April 2025 Bond Order at 7; Bond Memorandum at 8 n.3. Second, the danger finding was individualized and explained. The IJ placed a clear-and-convincing burden on DHS, considered the severity and what it described as the recency of Petitioner's criminal history, addressed his argument that his crimes were nonviolent, and weighed his mitigating evidence. See Bond Memorandum at 4-8.

Petitioner offers declarations from former IJs, news reports, and statistical analyses to show that institutional pressure has deprived him of a neutral decisionmaker. See Supp. Mem. at 10-14, 19; Dkt. 19-1 at 115-276. The Court considers that evidence only for futility and for the claims it decides. A party alleging bias "must overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47 (1975). Petitioner's evidence does not connect the institutional pressures he describes

to the IJ who decided his bond or to anything that occurred at his hearing. His analysis of Adelanto bond outcomes uses a primary empirical cutoff of November 10, 2025, which falls after both of his bond decisions. See Dkt. 19-1 at 214-16, 218, 220. The record also contains contrary indications. The BIA remanded the IJ's first decision for inadequate findings, and the same IJ declined to admit an unprocessed DHS exhibit at a removal hearing. See Dkt. 8-2 at 4-5; Dkt. 19-1 at 59-60. That the same IJ decided the removal case, and that Petitioner challenges the IJ's assessment of his expert, does not show bias in the bond determination. See Bond Memorandum at 8; Dkt. 19-1 at 75, 98. For these purposes, Petitioner has not shown that the IJ was biased.

### C. Alternatives to Detention

Petitioner contends that alternatives to detention were not adequately considered. See Petition at 8, 13. However, "[d]ue process does not require immigration courts to consider conditional release when determining whether to continue to detain an alien under § 1226(c) as a danger to the community." Martinez, 124 F.4th at 786 (describing Singh's clear-and-convincing protections as "the high-water mark of procedural protections required by due process" and declining to extend them). Petitioner received a hearing before a neutral IJ, with counsel, evidence, a clear-and-convincing burden on DHS, and an appeal. See April 2025 Bond Order at 6; Bond Memorandum at 3-4, 7-8. That does not make alternatives irrelevant. Instead, they remain relevant to whether continued detention has become excessive.

### D. Petitioner's Detention Does Not Violate Substantive Due Process

#### 1. The Governing Standard

Civil detention violates due process when it becomes "punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir.

2021). The analysis is case-specific. Torres weighed the length of detention, the government's contribution to delay, and the evidence supporting detention. See id. at 708-09. Although Torres arose in the context of criminal pretrial detention, the same concerns apply here. See Demore v. Kim, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1213-14 (9th Cir. 2022) (declining, in a § 1226(a) case, to "foreclose all as-applied challenges"). As Petitioner urges, the Court also considers the likely duration of future detention, alternatives to detention, conditions of confinement, and the likelihood of a final removal order. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117-18 (W.D. Wash. 2019) (rejecting bright-line rule and applying case-specific analysis). None of these factors sets a fixed limit.

**2. Length and Delay**

These factors favor Petitioner. He has been detained for more than two years. That is far longer than the month and a half to five months that Demore described as typical. See 538 U.S. at 529-31. Torres found twenty-one months of pretrial detention "approaching the limits of what due process can tolerate," 995 F.3d at 708-10, and Petitioner's detention is longer. Further detention is likely, and its length is uncertain. The removal appeal's briefing schedule is suspended with no new schedule set, see Dkt. 19-1 at 113, and a remand or petition for review may follow, see Supp. Mem. at 9, 16. Those are possibilities, not certainties.

Apart from one twenty-one-day briefing extension nothing suggests that Petitioner has delayed either proceeding. By contrast, the agency has. Correcting the IJ's first bond decision took about five months. See Dkt. 8-2 at 4-5. The BIA has not ruled on the certified appeal in more than a year, and Respondents offer no explanation. Recording problems postponed a removal hearing and, according to counsel, left part of the expert's testimony out of the

transcript. See Dkt. 19-1 at 54-58, 60, 108-11. And briefing has been suspended for over four months. See id. at 113.

Respondents object that Petitioner "broadly lumps together" DHS, the immigration court, and the BIA. Supp. Resp. at 4. Torres did leave open how much weight court-caused delay receives. See 995 F.3d at 708 n.11. Nothing shows that DHS's litigation conduct caused the delay or that the recording problems were deliberate. But Petitioner is held in executive custody pending executive adjudication, and delay in the agency's own review process bears on whether that custody has become excessive. See Demore, 538 U.S. at 532-33 (Kennedy, J., concurring) (identifying "unreasonable delay by the INS in pursuing and completing deportation proceedings"). Respondents' reliance on Prieto-Romero v. Clark, 534 F.3d 1053, 1056-58, 1062-65 (9th Cir. 2008), does not change this. That case arose under § 1226(a) after the removal order became final, and much of the detention there occurred during judicial review the petitioner sought. Petitioner's administrative proceedings, by contrast, appear to have stalled.

**3. Evidence Supporting Detention and Alternatives**

These factors weigh heavily against relief. The purpose of Petitioner's detention is protecting the community. That purpose rests on an individualized determination, made after a hearing at which DHS bore a clear-and-convincing burden and grounded in serious drug-trafficking and firearms convictions. See Bond Memorandum at 4-8. The plea agreement reinforces that determination. Petitioner delivered firearms and nearly a kilogram of methamphetamine, and he later stored more than three kilograms of methamphetamine, fentanyl, and firearms in his home. See Plea Agreement at

14-16.[2] That conduct occurred in 2021, and he has since served his sentence. But because he went directly from federal prison to ICE custody, there has been no period since his release from prison in which he has lived in the community. See Petition at 2; Bond Memorandum at 7. The Court draws no inference from that fact either way. The Court credits his remorse and rehabilitation efforts. See Petition at 3, 12-13. His record of appearing in court goes to flight risk, which is not the basis for his detention. Petitioner has not shown that the danger the IJ identified has diminished.

Petitioner proposes to live with his wife under GPS monitoring, home detention, firearm and substance prohibitions, and other conditions, in addition to his federal supervised-release terms. See Petition at 13; Bond Memorandum at 7. Those proposals deserve weight. But the IJ considered his supervision terms and found them insufficient to mitigate the danger. See Bond Memorandum at 7. The 2021 conduct also involved storing drugs and firearms in his home, and his son was a co-conspirator. The Petition does not state whether the proposed home is the same residence or who would live there. The Court does not infer that his wife participated in the offenses. The proposed measures may reduce risk, but Petitioner has not shown how they would address the danger of renewed trafficking or firearms activity that DHS established.

### 4. Conditions of Confinement

Petitioner alleges delayed medical care, limited recreation, and inadequate food and water. See Petition at 14-15. Counsel adds an October 2026 report of the court-appointed conditions monitor in L.T. v. U.S. Immigration & Customs Enforcement, No. 5:26-cv-00322-SSS-SP (C.D. Cal.).

---

[2] The Court has considered the documents under seal.

The Court does not find that any condition applies to Petitioner personally, or that conditions are adequate. Civil detainees held in conditions akin to criminal confinement may be presumed to be punished, see Jones v. Blanas, 393 F.3d 918, 932-34 (9th Cir. 2004), and the Court considers these allegations in the balance. But they do not independently support habeas relief, because they do not show that release is the only remedy. See Pinson v. Carvajal, 69 F.4th 1059, 1072-73, 1075 & n.15 (9th Cir. 2023). Contrary to Respondents' suggestion, Pinson does not bar considering the burdens of confinement in evaluating continued custody. This factor weighs modestly in Petitioner's favor. This Order does not adjudicate any conditions claim brought in a civil action.

**5. Weighing the Factors**

Petitioner's strongest authority is Grigoryan v. Andrews, No. 26-3305, 2026 WL 1983929 (E.D. Cal. July 9, 2026), report and recommendation adopted in part sub nom. Vahram G. v. Andrews, No. 26-3305, 2026 WL 2413529 (E.D. Cal. Aug. 18, 2026). Applying the same factors, that court ordered supervised release of a noncitizen detained more than two years despite a serious violent conviction, repeated bond denials, and rehabilitation evidence it found insufficient on its own. See Grigoryan, 2026 WL 1983929, at *8.

Grigoryan differs materially, however. First, the government's errors there went to removability itself. DHS ignored evidence that a predicate conviction had been vacated, and the IJ and BIA did not address it. See id. at *6-7. Here, the record shows agency delay but no comparable error. Second, the danger in Grigoryan was tied to an identified victim and addressed by targeted safeguards, including a protective order through 2029 and a separate residence. See id. at *7-8. Petitioner identifies no comparable measure. Third, the bond ruling reported in Grigoryan found that the petitioner had failed to

show he was not dangerous, whereas here DHS was required to prove dangerousness by clear and convincing evidence and did so. Compare id. at *3, 7, with Bond Memorandum at 4, 7-8.

The removal case also bears on the balance. The IJ's rulings sustaining removability, applying the particularly-serious-crime bar, and denying CAT protection are not final, and Petitioner's challenge to the IJ's assessment of his expert is not frivolous. See Dkt. 19-1 at 79-80, 85-86, 97-98; Supp. Mem. at 18. The outcome is uncertain, but the agency's rulings to date favor the government.

Weighing the factors, Petitioner has not shown that his detention has become excessive in relation to its regulatory purpose. In his favor are more than two years of detention, an uncertain period of further detention, agency delay, his family ties and long residence, his willingness to accept supervision, and the conditions he describes. Against them stands an individualized determination that his release would endanger the community. That determination was made under the most protective procedure the Ninth Circuit has required, and it rests on serious trafficking and firearms offenses. On this record, his detention remains reasonably related to the government's interest in protecting the community.

That conclusion is limited to the present record. The Court does not find that the government bears no responsibility for the delay, that conditions are adequate, or that the 2025 hearing will justify detention indefinitely. Further unexplained delay, materially longer detention, or evidence that the danger has abated could change the balance.

**E. Due Process Does Not Presently Require a New Bond Hearing**

In the alternative, Petitioner asks for a new bond hearing at which the government must justify continued detention by clear and convincing evidence. See Supp. Mem. at 21-22. To the extent that request rests on a

requirement that the IJ consider alternatives to detention, it is foreclosed: "Due process does not require immigration courts to consider conditional release when determining whether to continue to detain an alien under § 1226(c) as a danger to the community." Martinez, 124 F.4th at 786. Otherwise, the question is whether due process now requires additional process. The Ninth Circuit has evaluated such a request under Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976), assuming without deciding that it applies. See Rodriguez Diaz, 53 F.4th at 1212-14. Mathews weighs three factors: (1) the private interest; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest. 424 U.S. at 335.

The private interest strongly favors Petitioner, who has been in civil custody for more than two years with no fixed end. The government's interest favors Respondents. It includes protecting the community from drug-trafficking and firearms danger, ensuring appearance, and giving effect to § 1226(c), and the danger finding and plea agreement give it concrete support.

The second factor is decisive. Some detainees have never received a hearing. See Arriaga Lemus v. Warden of the Golden State Annex ICE Det. Facility, No. 26-928, 2026 WL 2255133, at *6 (E.D. Cal. Aug. 5, 2026) ("Petitioner has been detained since October 30, 2025, approximately nine months, and has not received any bond hearing before a neutral decisionmaker with authority to grant bond."); Banda, 385 F. Supp. 3d at 1109. Petitioner, by contrast, received a hearing with counsel, evidence, a clear-and-convincing burden on DHS, and a reasoned decision. Martinez described those protections as "the high-water mark of procedural protections required by due process." Martinez, 124 F.4th at 786. In Rodriguez Diaz, the Ninth Circuit held that "duration alone" could not "sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a)." 53

F.4th at 1212 (citations omitted). The court observed that "[d]ue process does not, of course, require two hearings." Id. (citation omitted).

Rodriguez Diaz does not control here. It arose under § 1226(a), relied on the availability of a changed-circumstances redetermination under 8 C.F.R. § 1003.19(e), and reserved other as-applied challenges. See id. at 1212-14. The regulations generally limit IJ redetermination for § 1226(c) detainees. See 8 C.F.R. § 1003.19(h)(2)(i)(D). The record does not establish whether a renewed Rodriguez hearing is available to Petitioner. His bond order advised that he could request one, see April 2025 Bond Order at 13. But the Court does not rest on that unused remedy.

Even so, Petitioner must show that additional process would meaningfully reduce the risk of error, and he has not. He identifies no defect in the 2025 hearing that a new hearing would cure, and no evidence of a change in the danger the IJ found. The removal-appeal delay concerns the removal record, not the bond record. The plea agreement dates older conduct without showing new rehabilitation or an error in the danger finding.

Petitioner's strongest argument is that four circumstances together make current process necessary: more than eighteen months have passed since his only hearing, the certified bond appeal has gone more than a year without a ruling, removal briefing is suspended, and the availability of a renewed hearing is uncertain. That argument is substantial. Neither Martinez nor Rodriguez Diaz categorically forecloses it, and the Court does not hold that an initial hearing always suffices. But Petitioner has not shown why a second hearing would reduce an identified risk of error in the current danger determination, and uncertainty about an administrative remedy does not supply that showing. Due process does not presently require a new bond hearing. Because Petitioner has not shown a violation, the Court does not reach his remedial arguments. See Supp. Mem. at 20-21.

### F. Remaining Requests

Respondents' failure to address every argument is not a concession. See Traverse at 2-4; Supp. Reply at 1-3. "The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment." Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990). No evidentiary hearing is needed. See Petition at 17. The analysis credits Petitioner's own allegations, resolves no credibility dispute against him, and otherwise rests on agency decisions and his own exhibits. Petitioner's motion for appointment of counsel and his requests to proceed without prepayment of the filing fee are moot.

## IV. ORDER

For the foregoing reasons, IT IS ORDERED that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1), as supplemented (Dkt. 19), is **DENIED** as to Petitioner's claims that his prolonged detention violates due process and that due process requires a new bond hearing; Petitioner's requests for release, a new bond hearing, declaratory relief, and an evidentiary hearing are **DENIED**;

2. To the extent the Petition challenges the IJ's 2025 bond determination on grounds that remain pending before the Board of Immigration Appeals, those challenges are **DISMISSED** without prejudice for failure to exhaust administrative remedies;

3. This action is **DISMISSED** without prejudice to a later petition based on materially extended detention, continued unexplained delay in Petitioner's administrative proceedings, or other materially changed circumstances;

4. Petitioner's motion for appointment of counsel (Dkt. 1 at 18) is **DENIED** as moot;

5. Petitioner's requests to proceed without prepayment of the filing fee (Dkts. 6, 9, 10) are **DENIED** as moot; and

6. IT IS FURTHER ORDERED that Judgment be entered accordingly.

Date: November 13, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge